1815.

Johnson
vs
Medtart

One of the issues was on the act of limitations, and the jury have found that issue for the defendant. This puts the case at rest.

*Taney.* in reply. The verdict is general, and being for the defendant, went to all the issues Whether limitations barred or not, the plaintiff, under the opinion of the court, could not recover. The replication states expressly that the deceased was called as well by the name of *George* as *Anthony;* and the rejoinder refers to the name in the bond. There was an attempt to connect the inventory with the bond, to show that it was the inventory on the estate upon which letters of administration had been granted. The evidence was not rejected because it was not sufficient, but because there was no evidence that he was called as well by the one name as the other. The obligors gave the name to the deceased, and they are estopped to deny he was not called by both names. The inventory is the act of the administrators, and their miscalling the deceased shall not benefit them. It is their act, and others are not to be injured thereby.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

---

December.

JOHNSON VS. MEDTART.

A writ *de homine replegiando* cannot legally issue from any of the courts of law of this state.

APPEAL from *Frederick* County Court. In this case a writ *de homine replegiando* issued, (bond with security for that purpose having been first given,) to replevy the plaintiff, (now appellant,) out of the possession of the defendant, (the appellee.) The writ commanded the sheriff, "that justly and without delay you cause to be replevied *J John-son*, whom *J. Medtart* hath taken, and doth keep taken, as it is said, unless he was taken by the command of any of the justices of the said state for death of man, or for any other right for which he may not be replevied according to the laws of this state, that we may hear no more clamour thereupon for want of justice. Hereof fail not," &c. The sheriff returned the writ, "Replevied, and the defendant summoned." The defendant appeared and moved the court *ex officio* to quash and abate the writ, for the following reasons: 1. Because it has been issued by the clerk of this court contrary to the practice of this court, and contrary to the laws of this state. 2. Because the writ upon the

face of it is *de facto* a nullity and destroyed, having no practice of this court, or laws of this state, to support it, and ought to abate by the direction of the court *ex officio*, without any plea thereto on the part of the defendant. 3. Because the writ is defective in form. 4. Because this court can take no cognizance of any such writ by any practice of this court, or any law of this state. The county court, for the reasons assigned, quashed the writ, and ordered that the plaintiff redeliver himself to the defendant. The plaintiff appealed to this court.

*Ross*, for the Appellant. The motion in the court below was to quash the writ *de homine replegiando*, on the ground that the county courts of this state have no jurisdiction to sustain such a writ; and the court determined that they had no jurisdiction to issue the writ, and ordered it to be quashed. The writ *de homine replegiando* lies to replevy a man out of prison, or out of the custody of any private person. 3 *Blk. Com.* 129. It is an original writ, and the party may sue it of right. It is properly returnable in the courts of law, and may be there declared upon. *Treblecock's* case, 1 *Atk.* 633. Being an original writ, and consequently issuing from the court of chancery, which in *England* is the *officina justitia*, furnishes no argument against the jurisdiction of the county courts in this state, where their writs and process, like their laws, are formed on a plan which by experience have been found applicable to their local and other circumstances. Thus in *England*, the original writ is the king's warrant for the judges of the common pleas, &c. to proceed to the determination of the cause, and is the foundation of their jurisdiction; but the county courts of this state derive their authority from a different *officina justitia*, and their jurisdiction does not rest upon the mandatory writ of the chancellor. The writ of replevin at common law in *England* is an original writ, and issues from chancery, and it is the common law replevin that has been adopted in this state, for there can be no replevin in this state under the statute of *Marlbridge*. The county courts have been in the constant practice of issuing the common writ of replevin, without any special mandate from the court of chancery, and their jurisdiction has never been called in question; and if there is in *England* a difference between the writs *de homine replegiando*,

and the common replevin at common law, in what consists their difference in this state that the county courts should have jurisdiction in the one case and not in the other? Does the *habeas corpus* act create that discrimination, by rendering the writ *de homine replegiando* in a great measure obsolete? The common law, and its remedies, are not repealed by nonuser, nor does the giving a new writ take away the old remedy, unless it be so expressly provided. The writ *de homine replegiando* issued in many cases in *England*, after the passage of the *habeas corpus* act. *Designy's* case, *Sir T. Raym.* 474, decided in 1682. *Moor vs. Watts*, 2 *Salk.* 581, decided in the reign of *William* III. They have also issued in *Baltimore* and *Harford* counties. By the *third* section of the bill of rights, the inhabitants of *Maryland* are entitled to the common law of *England*, and the trial by jury, according to the course of that law. By the *twenty first* section, no free man ought to be taken and imprisoned, &c. or deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land. The court will perceive by a perusal of the *habeas corpus* acts of this state, that many instances may occur, (and none more striking than the plaintiff's case, who was denied the right of controverting the return to the *habeas corpus*, which he had obtained,) in which an inhabitant of this state may be deprived of his liberty contrary to the common law, and without the judgment of his peers, unless the county courts have jurisdiction to issue writs *de homine replegiando*. The *habeas corpus* act makes it the duty of the chancellor, judge or justice, either to discharge, admit to bail, or commit, &c. To admit to bail by the act supposes the party committed for some offence cognizable in the criminal court. The commitment is ordered where the party is charged with an offence not bailable; and the party is only restored to his liberty if it shall appear to the judge that he is detained without any legal warrant or authority. In the two first cases the inhabitant will be tried according to the course of the common law, and have the benefit of a trial by his peers; but if the party is in the custody of a recruiting officer, and detained upon a pretended or illegal enlistment, this offence, not being cognizable in the criminal court, no recognizance can be taken for his appearance in the county court the term following, to try him by his peers, but he

is either discharged or committed, as the opinion of the judge may be on the enlistment; and if committed—to whom? To the custody of him by whom he was detained —the recruiting officer? And is thus deprived of his liberty without the judgment of his peers passing upon him, and left to his remedy upon the false return to the *habeas corpus*, should it be false; for a return may be true, and the original caption totally illegal, in which case the suffering individual would be deprived of even this shadow of redress, by an action for the false return. The general form of a return to a *habeas corpus* is, "that the party has not the person in his custody, possession or power." *The King vs. Winton*, 5 *T. R.* 91. An officer may order his recruit to a distant post, under a superior officer, and distinct command, and upon a return to a *habeas corpus*, issued by the father for his son, or master for his apprentice, may with truth make the above return, though the taking of the son or apprentice, in the first instance, was the most flagrant invasion of personal liberty. The *habeas corpus* act, in such a case, would furnish no remedy, but the writ *de homine replegiando* would punish him for the illegal taking, though at its service upon him, the son, &c. was neither in his custody, possession or power. The writ *de homine replegiando* is a writ not unknown to the laws of this state, for it is specially recognized by the legislature in the act of 1810, *ch.* 68, *s.* 2; and surely it will be unnecessary to argue, that the county courts, having jurisdiction under this act to issue this writ upon the application of a negro for his freedom, have also the power to issue it upon the application of a free man to recover his liberty.

*Pigman*, for the Appellee. Upon the first and second reasons assigned in this case for quashing the writ *de homine replegiando*, if there was neither common law, nor statute law of this state, nor practice of the court, to authorise the use of it, it was the duty of the court *ex officio* to quash it, without requiring a plea in abatement. 1 *Bac. Ab.* tit. *Abatement.* The court will not call upon a defendant to plead in abatement or in bar, to any writ issued without lawful authority. In the language of the law, if the writ issues without lawful authority, it is *de facto* a nullity, and deserves no plea or replication of any sort. In *England*, this writ has long been disused, on account of the

numerous exceptions which it contains, and of the superiority of the writ of *habeas corpus.* The exceptions will be found in 1 *Lill. Ent.* 293, and in other books of entries, and if they should be omitted in the writ, it would doubtless be quashed; for they contribute to mark out the sheriff's duty, which is a qualified one. We have always taken for granted, that *homine replegiando* could not issue out of our county courts. In *England* it can only issue from the law side of the court of chancery, as *officina justitia.* It is an original writ—so is the *alias* and the *pluries.* 14 *Vin. Ab.* 305, (A) pl. 1. 4 *Com. Dig.* tit. *Imprisonment,* (L. 4.) 361. *More vs. Watts,* 1 *Lill. Ent.* 293. *Reg.* 77. *Fitz. N. B.* 66. The *Withernam* which issues upon the return of *eloigned,* or the *pluries,* is a judicial writ, and goes from the court to which the *pluries* is returned; and it is the first *judicial* process in such an action. In *More vs. Watts,* 1 *Lill. Ent.* 293, will be found the entire proceedings in a *homine replegiando,* in which the plaintiff was nonsuited. It begins with the *pluries* from chancery, gives the return of *eloigned* made by the sheriff to the court of King's Bench. The *Withernam,* founded upon that return, issued by the King's Bench, and the consequent proceedings which terminated in a *non pros.* It is a great error to confound the *homine replegiando* with the common replevin, or *replevin de averis.* At common law the replevin *de averis* issued exclusively from chancery. 3 *Blk. Com.* 147. *Weaver vs. Lawrence,* 1 *Dall.* 156. The statute of *Marlbridge* authorised the proceedings by plaint, as it is found in all the books of entries; and it would seem that we have modelled our action of replevin for goods upon the proceedings by plaint. In *Weaver vs. Lawrence,* 1 *Dall.* 156, there is a great display of the law relative to the two modes of proceedings by writ and by plaint. From which it is clear, that the writ of replevin, even *de averis,* could only issue from chancery, it being an original writ, and not a judicial one. The statute of *Marlbridge* did not touch the *homine replegiando,* it applied wholly to replevin of goods—2 *Institutes*; and our practice cannot be said to have changed the common law in relation to the writ of *homine replegiando,* for we have no practice, (and never had,) upon the subject. There could be no inducement to recur to that antiquated and inadequate writ. The *habeas corpus,* and

petition for freedom, rendered it unnecessary and idle. It stands now, therefore, as it always has stood, upon the common law, and by the common law it must issue from chancery. The writ in this case must therefore be quashed, even if it were admitted that such writ could (as it is believed it could not,) be maintained in this state, if issued agreeably to the common law. If it were of any importance, it would be easy to show, that the case of a person detained as a recruit, regularly enlisted, is within the exception of the writ *de homine replegiando;* such a person is as much "*non replegiabilis,*" as the person mentioned in 2 *Saunders* 60, (arrested on the King's writ.) The two cases are alike, and ought to receive the same judgment, and the sheriff may and ought to return the exceptions. The plaintiff was a soldier in the *United States* army. The mischief of interfering in time of war with the recruiting service, would even be greater than that of stopping the ordinary process of the law. The writ of *habeas corpus* can do little prejudice to the public, while it may be useful to the individual. It can never issue without cause shown on oath, and is soon disposed of. The writ of *homine replegiando*, is *ex debite justitia*, without cause shown, and if the sheriff does not do his duty with reference to the exceptions, (as he may either upon his own responsibility, or by taking the verdict of an inquest,) the recruiting service may be destroyed. No country could carry on war in which such an anomaly existed. Even if it had been lawful to issue the writ by the clerk of *Frederick* county court, from the very nature of the federal and state governments the soldiers of the army ought to have been inserted as one of the exceptions. To permit any of the courts of any of the states to issue any writ, where the proceedings would be tedious and long, to interfere with any part of the army, would produce a most dangerous conflict of powers between the states and the federal government, which would weaken measures for the general defence, and might produce intestine confusion and disorder, inimical to our social peace and happiness.

JUDGMENT AFFIRMED.